IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAYNE R. AVERILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 12-599-GMS |
| | ) |
| THOMAS F. CELELLO, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff, Wayne R. Averill ("Averill"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit on May 14, 2012, pursuant to 42 U.S.C. § 1983.[1] (D.I. 3.) Averill appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 7.) The court reviewed and screened the complaint pursuant to 28 U.S.C. § 1915 and § 1915A, dismissed several defendants, and allowed Averill to proceed against certain medical defendants. Prior to service of the complaint, Averill filed an amended complaint. (D.I. 19.) The court reviewed and screened the amended complaint but again, prior to service, Averill filed a motion for leave to amend, granted on September 23, 2013. (*See* D.I. 19, 22, 23.) The court proceeds to review and screen the second amended complaint. (*See* D.I. 24.)

**I. BACKGROUND**

The second amended complaint: (1) reinstates Dr. Francis J. Schanne ("Schanne"), Urologic Surgical Associates of Delaware ("Urologic Surgical Associates"), Michael Deloy

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

("Deloy"), Perry Phelps ("Phelps"), and David Pierce ("Pierce"); (2) adds as defendants John Doe Hendrix ("Hendrix"), CMS Jane/John Does ("CMS Does"), CCS Jane/John Does ("CCS Does"), Delaware Department of Correction ("DOC") Jane/John Doe Transfer Officers ("Doe Transfer Officers"), Sgt. Monty ("Monty"), VCC Counselor Jane Doe ("Doe Counselor"), Cpt. Burton ("Burton"), Cpl. Bambi Transport Officer ("Bambi"), and DOC John Doe Transport Officers ("Doe Transport Officers"); and (3) renames Dr. Dean Sieger as Dr. Dean Reiger ("Dr. Sieger/Reiger").

The complaint and amended complaint allege that Averill was housed at the Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware, and he had a testicular condition that required surgery. The defendants Dr. Thomas F. Celello ("Dr. Celello") and Dr. Christina Jones ("Dr. Jones") were the head and supervising physicians for the defendant Correctional Medical Services, Inc. ("CMS").[2] Dr. Jones signed an order for Averill's surgery and, on May 18, 2010, he was transported to the Foulk Eye Care Center where hydrocele[3] surgery was performed by Dr. Schanne. From May 16 to May 26, 2010, Averill recovered in the HRYCI infirmary and, on May 26, 2010, he was discharged to general population. The next day, Averill was transferred to the VCC where he unsuccessfully sought housing in the infirmary. Averill constantly complained about his condition. On June 2, 2010, Averill saw Dr. Louis Desrosiers ("Dr. Desrosiers") who provided medical treatment, on June 18, 2010, Averill was taken to the

---

[2]The court takes judicial notice of an obituary notice in the Delaware News Journal on July 10, 2012, that Dr. Celello died on July 6, 2012, at his home in Wilmington, Delaware. *See Ieradi v. Mylan Laboratories, Inc.*, 230 F.3d 594 n. 2 (3d Cir. 2000).

[3]Hydrocele is defined as a pathological accumulation of serous fluid in a bodily cavity, especially in the scrotal pouch. *The American Heritage Stedman's Medical Dictionary* 378 (2d ed. 2004).

2

offices of Urologic Surgical Associates, and on June 24, 2010, Averill underwent a second surgery at St. Francis Hospital in Wilmington, Delaware, again performed by Dr. Schanne. Averill continued to seek medical attention subsequent to July 1, 2010, when the defendant Correct Care Solutions ("CCS") became the general healthcare provider for the DOC. Averill continued with complaints of pain and sought treatment for MERSA (i.e., methicillin-resistant staphylococcus aureus). Averill's medical grievances were upheld and he was seen by Dr. Sieger/Reiger to discuss his medical issues, but Dr. Sieger/Reiger did nothing for the pain.

Paragraphs one through twenty-five, twenty-nine through fifty-two, seventy-three through seventy-six, seventy-eight through eighty-six, and one hundred through one hundred eighteen of the statement of claim in the second amended complaint, with few exceptions, are identical to the original complaint and the amended complaint. The second amended complaint contains additional allegations, the majority of which are frivolous or fail to state a claim upon which relief may be granted, as follows. Averill alleges that when he was transferred to the VCC[4] on May 27, 2010, he complained to Bambi and DOC Doe Transport Officers that he should be placed in a single seat given his post-surgical problems. Bambi told Averill to sit on the floor. (D.I. 22, ¶¶ 26-28.) Averill underwent surgery again on June 24, 2010. Averill alleges that from May 27, 2010 until June 24, 2010, he wrote to Pierce and Phelps complaining that his surgery "went bad," that he was having complications and that the defendants R.N. Robert Davenport ("Davenport") and Dr. Dale Rogers ("Dr. Rogers") would not admit him to the infirmary even though two other correctional officers ordered his admission. (*Id.* at ¶ 57.) Also, from June 9,

---

[4]Averill refers to the VCC as the Delaware Correctional Center. The VCC was formerly known as the Delaware Correctional Center. However, it had been renamed to the VCC prior to all actions as alleged in the Second Amended Complaint.

3

2010 to approximately July 7, 2010, an individual holding Averill's power of attorney called the VCC to speak with Burton, Pierce, and Phelps in an effort to obtain medical care for Averill. (*Id.* at ¶ 56.) In addition, from June 9, 2010 until June 24, 2010, Averill wrote Burton and indicated that he believed he needed to see a surgeon due to medical issues. (*Id.* at ¶ 55.)

Averill alleges that from June 9, 2010 until June 24, 2010, although he advised Monty several times of serious post-operative complications that required medical attention, Monty took no action. (*Id.* at ¶¶ 53-54.) When Averill return to the C-Building, Monty told Averill that his cellmate was a homosexual and when Averill expressed his concerns, Monty told him to "deal with it." (*Id.* at ¶¶ 58-62.) Averill sought help from Doe Counselors and was told to write to Burton, Pierce or Phelps which Averill did, but he received no responses. (*Id.* at ¶¶ 63-64.)

In early October, 2010, Burton removed Averill from his cell and placed him in the C-Building chow area to question him about the individual who had called on Averill's behalf for medical attention. (*Id.* at ¶¶ 66-69.) Burton told Averill that the only way he could be moved was if Averill's cellmate bothered him sexually. (*Id.* at ¶ 70.) Burton then transferred Averill to the Secured Housing Unit ("SHU") where he remained for six or seven days. (*Id.* at ¶ 72.)

After approximately a year and one-half of untreated pain, CCS sent Averill to urologist Dr. Paul Doe ("Dr. Doe") for treatment. (*Id.* at ¶¶ 120-128.) Averill was referred to plastic surgeon Dr. Swier who administered nerve blocks on two occasions. (*Id.* at ¶¶ 130-137.) The nerve blocks provided Averill pain relief, but the pain returned two weeks after the second nerve block. (*Id.* at ¶ 137.)

Averill seeks compensatory and punitive damages and injunctive relief.

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Averill proceeds *pro se*, his pleading is liberally construed and his second amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R.

5

Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Averill leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 678. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that Averill has a "plausible claim for relief."[5] *Id.* at 211. In other words, the amended complaint must do more than allege Averill's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of

---

[5] A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. Personal Involvement/Respondeat Superior

Averill names as defendants Deloy, Phelps, Pierce, Hendrix, Burton, and Dr. Celello. It appears that Deloy, Phelps, Pierce, and Burton are sued based upon their supervisory positions. The second amended complaint contains no allegations directed towards Hendrix or Dr. Celello.

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (unpublished) (citing *Iqbal*, 556 U.S. at 675-77); *Rode v. Dellarciprete*, 845 F.2d at 1207).

Averill provides no specific facts with regard to Hendrix's or Dr. Celello's personal involvement as is required to state a claim for violations of his constitutional rights. Nor does the second amended complaint contain facts that Deloy, Phelps, Pierce, and/or Burton expressly directed the deprivation of his constitutional rights, or created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the

alleged deprivation. For the above reasons, the court will dismiss the claims against Deloy, Phelps, Pierce, Burton, Hendrix, and Dr. Celello as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### B. Grievances

The second amended complaint contains several allegations directed against Deloy with regard to acts taken by him during the grievance process. The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (unpublished). To the extent that Averill bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (unpublished) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Notably, the denial of grievance appeals does not in itself give rise to a constitutional claim as Averill is free to bring a civil rights claim in District Court. *Winn v. Department Of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009) (unpublished) (citing *Flick v. Alba*, 932 F.2d at 729.

Averill cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, that they were denied, or that the grievance process is inadequate. Therefore, the court will dismiss the claims against DeLoy as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### C. Medical Needs

The second amended complaint alleges that Averill, or someone on his behalf, wrote, contacted, or attempted to contact Deloy, Phelps, Pierce, and Burton in an effort to obtain

medical care for Averill and that the defendants failed to respond to the requests. The U.S. Court of Appeals for the Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The Third Circuit clarified that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

It is evident from the allegations in the complaint that Averill was seen by medical personnel on numerous occasions. Hence, absent evidence to the contrary, the foregoing defendants were justified in believing that Averill was receiving adequate medical care. Finally, "absent viable claims that the medical defendants violated his constitutional rights [plaintiff] cannot state a claim against the non-medical defendants for failure to cure the medical defendants' conduct." *Serrano v. Folino*, 339 F. App'x 254, 258 (3d Cir. 2009) (unpublished).

Averill names as defendants Doe Transfer Officers who attempted to obtain medical care for Averill but were thwarted by their supervisor. The allegations against the Doe Transfer Officers do not rise to the level of a constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that

need.) Averill also alleges that he informed Monty on several occasions from June 9, 2010 to June 24, 2010 that he required medical attention but Monty took no action. These bare bones allegations do not rise to the level of a constitutional violation. Moreover, Averill's allegations indicate that he was seen by a nurse on June 17, 2010 and taken for outside medical care on June 18, 2010.

Accordingly, the court will dismiss the medical needs claims against Deloy, Phelps, Pierce, Burton, Monty, and Doe Transfer Officers as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### D. Medical Negligence

To the extent that Averill again raises medical negligence claims, the claims fail. In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act. 18 Del. C. §§ 6801-6865. When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury. *Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted); 18 Del. C. § 6853. Because Averill alleges medical negligence, at the time he filed the complaint he was required to submit an affidavit of merit as to each defendant signed by an expert witness. 18 Del. C. § 6853(a)(1). His failure to do so, dooms his state medical negligence claims. *See, e.g., Washington v. Grace*, 445 F. App'x 611, 616 (3d Cir. 2011) (unpublished).

In addition, to the extent that Averill again raises § 1983 claims against Dr. Schanne and Urologic Surgical Associates, once again they are dismissed as they are not state actors. *See West v. Atkins*, 487 U.S. at 48. To act under "color of state law" a defendant must be "clothed with the authority of state law." *Id.*, 487 U.S. at 49. The second amended complaint alleges that Dr. Schanne is employed as a surgeon at Urologic Surgical Associates, an outside medical provider to whom Averill was sent to receive medical care. The facts, as alleged, indicate that neither of these two defendants are "clothed with the authority of state law." *See Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 244-45 (3d Cir. 2005); *Biener v. Calio*, 361 F.3d 206, 216-17 (3d. Cir. 2004). The § 1983 claims against them have no arguable basis in law or in fact and, therefore, will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915(A)(b)(1).

### E. Due Process

It appears that Averill attempts to raise a due process claim against Burton based upon his transfer to SHU. The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin v. Connor*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). In deciding whether a protected liberty interest exists under *Sandin*, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn*, 318 F.3d at 532 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). The Third Circuit has held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under *Sandin*. *See Young v. Beard*, 227

11

F. App'x 138 (3d Cir. 2007) (unpublished). Thus, with regard to the limited duration of time Averill spent in SHU, he fails to state a constitutional claim on the facts alleged. *See Henderson v. Kerns-Barr*, 313 F. App'x 451 (3d Cir. 2008) (unpublished).

To the extent Averill raises a claim that he did not receive the procedural due process he was due, again he cannot prevail. If "restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentenced imposed by a court of law,'" then the prisoner does not have a "protected liberty interest" and the "state owed him no process before placing him in disciplinary confinement." *Mitchell v. Horn*, 318 F.3d at 531; *see also Henderson v. Kerns-Barr, supra* (assuming that the plaintiff was not afforded the protections called for by *Wolff*, because the sanction of 90 days disciplinary confinement did not affect the inmate's release date, there was no liberty interest and, therefore, no trigger of due process rights). Inasmuch as Averill has no constitutional right to avoid a short housing assignment in SHU, he has no right to process surrounding it. Therefore, the court will dismiss as frivolous the Due Process claim raised against Burton 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

**F. Housing**

Averill was housed with a homosexual inmate and told Monty he was not comfortable being celled with the individual. Averill alleges that Monty made comments to him about his cellmate and would not take action to move him to another cell. He also complained to the Doe Counselor who told him to write to Burton, Pierce, and Phelps, which he did. It is well established that an inmate does not have a constitutional right to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242. In short, prisoners have no inherent constitutional right to placement in any particular

prison, to any security classification, or to any particular housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976). In addition, no matter how offensive and derogatory the language that Monty allegedly used, the same does not give rise to a constitutional claim. *See Aleem-X v. Westcott*, 347 F. App'x 731 (3d Cir. 2009) (unpublished) (verbal abuse of a prisoner, even of the lewd variety, is not actionable under 42 U.S.C. § 1983). The allegations against Monty, Doe Counselors, Burton, Pierce, and Phelps do not rise to the level of a constitutional violation. Therefore, they will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915(A)(b)(1).

### G. Bus Seat

Averill alleges his constitutional rights were violated during a bus transport when he was not provided a single seat given his medical condition. He complained to DOC Doe Transport Officers and Bambi. Bambi told Averill to sit on the floor in the bus isle. The allegations do not rise to the level of a constitutional violation. Accordingly, the claims against DOC John Doe transport officer and Bambi will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## IV. CONCLUSION

For the above reasons, the court will dismiss the defendants Dr. Celello, Dr. Francis J. Schanne, Urologic Surgical Associates of Delaware, Michael Deloy, Perry Phelps, David Pierce, John Doe Hendrix, Sgt. Monty, DOC Jane/John Doe Transfer Officers, JTVCC Jane Doe Counselor, Cpt. Burton, Cpl. Bambi, DOC John Doe Transport Officer and all medical negligence claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1). The plaintiff has alleged what appear to be cognizable medical needs claims against the defendants

Dr. Christina Jones, Robert Davenport, Dr. Dale Rogers, Correctional Medical Services, Correct Care Services, and Dr. Dean Sieger/Reiger, CMS Jane/John Does and CCS Jane/John Does and he will be allowed to proceed against them. Future motions to amend the complaint will not be considered by the court until service has been effected.

An appropriate order will be entered.

/s/ _____
CHIEF, UNITED STATES DISTRICT JUDGE

Dec 10, 2013
Wilmington, Delaware